UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LANCE ADAM GOLDMAN,

          Petitioner,

v.

JOSEPH BARRETT,

          Respondent.

Case No. 1:17-cv-506

Honorable Paul L. Maloney

_____/

### **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Lance Adam Goldman is incarcerated with the Michigan Department of Corrections at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. On December 21, 2015, in the Kalamazoo County Circuit Court, Petitioner entered pleas of guilty to one count of obtaining money by use of a false pretense, MICH. COMP. LAWS § 750.218, and one count of conspiracy to obtain money by use of a false pretense, MICH. COMP. LAWS §§ 750.157a, 750.218. On March 8, 2016, the court imposed concurrent sentences of ten months to seven years, six months for each offense.

On May 24, 2017, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

    I.    The Felony Complaint, Arrest Warrant, and Information ("Charging Documents") are fatally defective in that they fail to inform me of the nature and cause of the accusation.

II.     The Michigan Parole Board lacks jurisdiction to parole me, and I am not subject to their jurisdiction.

III.    The Presentence Investigation Report is FULL OF LIES!

(Pet., ECF No.1, PageID.6-9.)  Respondent has filed an answer to the petition (ECF No. 14), stating that the grounds should be denied because they are procedurally defaulted, non-cognizable, and meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.     Factual allegations

This petition is not the Court's first opportunity to consider the constitutionality of Petitioner's conviction and sentence.  Petitioner filed a previous petition in *Goldman v. Barrett*, No. 1:16-cv-1393 (W.D. Mich.) (*Goldman I*). *Goldman I* was assigned to Judge Janet T. Neff and referred to Magistrate Judge Ellen S. Carmody.  Petitioner raised two issues in *Goldman I*, slight variations on his present habeas issues I and III.   *Goldman I* was dismissed without prejudice on January 26, 2017, for want of prosecution.

Petitioner also filed a prisoner civil rights action under 28 U.S.C. § 1983 relating to his conviction:  *Goldman v. Consumers Credit Union et al.*, No. 1:16-cv-1372 (W.D. Mich.) (*Goldman II*).  *Goldman II*, like the instant case, was assigned to Judge Paul L. Maloney and referred to the undersigned.  *Goldman II* initially raised claims against one of the victims of Petitioner's false pretenses crime as well as the

Kalamazoo County Sheriff's Department personnel who investigated the crimes.  By amendment, Petitioner expanded the *Goldman II* complaint to include almost every participant in Petitioner's criminal prosecution including: the magistrate who signed the felony complaint; the assistant prosecuting attorney who authorized the warrant and later amended the information to add new charges; the governor who signed the extradition papers that brought Petitioner from Florida to Michigan for prosecution; the state district court judge who presided over Petitioner's arraignment, set bond, and bound Petitioner over following his preliminary examination; the assistant prosecuting attorney who represented the county at the preliminary examination; the state circuit court judge who presided over Petitioner's plea and sentencing; the assistant prosecuting attorney who represented the county at the plea and sentencing; Petitioner's appointed counsel at the plea and sentencing; the state district, circuit, appeals, and supreme courts that handled Petitioner's criminal case; the state court of appeals judges that denied him relief on appeal; and the state attorney general.

Petitioner raised many issues in *Goldman II*, including all of the issues he raises in the instant petition.  Judge Maloney dismissed Petitioner's claims on grounds of immunity and for failure to state a claim.  Judge Maloney's analysis in *Goldman II* significantly informs this report and recommendation.

During November of 2014, Petitioner and his significant other, Roseanna Dickenson,[1] concocted and carried out a scheme to obtain money:  Ms. Dickenson wrote Petitioner worthless checks drawn upon her Suntrust bank account, which was closed; Petitioner opened deposit accounts at Kalamazoo-area financial institutions; he deposited Ms. Dickenson's checks; and then withdrew funds by writing checks on the accounts.  At the preliminary examination, and thereafter, Petitioner has argued that there is no illegality in the arrangement.  (Prelim. Exam. Tr., ECF No. 15-2, PageID.401-414.)  Based on his view of the contractual relationship between him and the financial institutions, the institutions could place a hold on the checks deposited or grant him an unsecured line of credit until the check cleared.  The institutions chose the latter course.  They permitted Petitioner to withdraw funds by way of writing checks on his account before the checks from Ms. Dickenson's account had cleared.  As a result, from Petitioner's perspective, he owed them money on the unsecured line of credit when the checks failed to clear.  Petitioner has acknowledged that he knew that Ms. Dickenson's account was closed.[2]  When the checks from Ms.

---

[1] Ms. Dickenson pled guilty to writing checks without sufficient funds and using false pretenses to obtain money.  When Petitioner filed his petition, she was serving a term of probation for those offenses.  She absconded from probation during September of 2017.  http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=964144 (last viewed on Feb. 4, 2018).  This Court takes judicial notice of the information provided by a search of the MDOC Offender Tracking Information System (OTIS) website.  *See, e.g.*, *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249 *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821–22 n.3 (E.D.Mich. 2004).

[2] Petitioner's position has wavered with respect to what he knew about Ms. Dickenson's account; however, at the preliminary examination, Kalamazoo Sheriff's Department deputy Phil Neuman testified that Petitioner admitted Petitioner knew the account was closed.  (Prelim. Exam. Tr., ECF No. 15-2, PageID.394-395.)

Dickenson were returned "account closed", according to Petitioner, the relationship between him and the institution was simply one of debtor-creditor, not perpetrator-victim.

District Judge Haenicke was not convinced by Petitioner's argument.  He bound Petitioner over to circuit court for felony proceedings.  Before Judge Haenicke bound Petitioner over, he explained step-by-step how Petitioner's conduct violated the false pretenses statute:

> And I'll go ahead and read the full jury instruction . . . , which contains the elements, even though, obviously we don't have a jury present today.
>
>> "The defendant is charged with the crime of obtaining money by false pretenses.  To prove this charge the Prosecutor must prove each of the following,"
>
> again, for today's purposes, probable cause to believe these,
>
>> "First, that the Defendant used a pretense."
>
> Now, in Michigan we have a – we have a criminal jury instruction on the definition of what a pretense is.
>
>> "A pretense is the use of a statement, writing or any other device that is false and/or that could mislead a person it is presented to.  A pretense is to knowingly make someone else believe something that is false."
>
> All right. So as to that first element, that the Defendant used a pretense.  Well, again, what was the evidence?  The evidence was presented that the Defendant and his girlfriend, and I believe that's this Rosanna Dickenson, presented a check to the credit union.  That the undisputed testimony of the deputy was that the Defendant stated that he knew that the account was closed.
>
> So, the Defendant presented a check on a closed accounted when he opened these account – opened this account at the credit union back in November of 2014.  Using a check from a – an account that has been closed is a pretense under the definition used in Michigan.

"Second, that the Defendant knew that the pretense was false at the time he made it."

Well, again, the deputy's testimony was that he overheard the Defendant state that he knew that the account was closed.

"Third, that at the time that the Defendant used the pretense the Defendant intended to defraud or cheat someone."

Well, that's, again, reasonably drawn from the circumstances that if the Defendant used a check on a closed account to open an account and then write checks on it, the Defendant intended to defraud or cheat someone.

"Fourth, that another person relied on the Defendant's pretense."

Well, we had the testimony from the two witnesses at the credit union that, in fact, the credit union – that the Defendant did write checks on that credit union account that was established opening using the pretense.  The check from the closed account.

"Fifth, that relying on this pretense, the person suffered a loss of some value."

The testimony from both of the witnesses was that the checks that the Defendant drew on the credit union account were over a thousand dollars. So that element is met.

"Sixth, that the amount of loss had a fair market value at the time that was $1000 or more less than $20,000."

Again, the testimony was that it was over $1000 dollars.

So, as to the false pretense claims for the checks that were drawn, the two counts, the Court does find probable cause to believe that the offenses charged were committed and that the Defendant committed them.  That they were committed in Kalamazoo County based on the testimony of the witnesses.  And that that occurred in November of 2014.

(Prelim. Exam. Tr., ECF No. 15-2, PageID.418-421.)

With that understanding of the crime with which he was charged, a few weeks later, Petitioner entered his plea:

| | |
|---|---|
| The Court: | Are you Lance A. Goldman? |
| The Defendant: | I am. |
| The Court: | Mr. Goldman, are you going to plead guilty with an agreement today? |
| The Defendant: | I am. |
| The Court: | I'll have you sworn in. |
| [oath administered] | |
| The Court: | The agreement, please. |
| [The prosecutor]: | Your Honor, the Defendant will be pleading guilty to count one [felony obtaining money by false pretenses] as a second offender and count three [felony conspiracy to obtain money by false pretenses] as a second offender.  At sentencing, I'll dismiss counts two [felony charge of obtaining money by false pretenses], four, five, and six [all misdemeanor charges of obtaining money by false pretenses].  I have agreed to make no recommendation except for restitution.  Restitution is to be made on all counts to all victims and there is extradition costs.  This is conditioned on the Defendant having no prior – excuse me.  This is conditioned on the Defendant complying with bond including committing no new criminal offenses and appearing for all ordered events including the pre-sentence investigation. |
| The Court: | I met with Counsel in chambers and was made aware of the facts and circumstances of the case and estimated guidelines from each of the parties.  I indicated that at the time of sentencing that I would sentence Mr. Goldman at the bottom of the guidelines, however[ ] they are determined on the |

|                    |                                                                                                                                                                                                                                                           |
|--------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                    | day of sentencing.  I guess there is some dispute as to prior criminal history and total value and such.                                                                                                                                                 |
| [Defense counsel]: | That's correct.                                                                                                                                                                                                                                          |
| The Court:         | And your plea agreement with the prosecutor is correct?                                                                                                                                                                                                  |
| [Defense counsel]: | That is an accurate statement of the agreement, your Honor.                                                                                                                                                                                              |
| The Court:         | Mr. Goldman, is this your understanding?                                                                                                                                                                                                                 |
| The Defendant:     | That is the way I understand it, yes sir.                                                                                                                                                                                                                |
| The Court:         | Anyone promise you anything else or threaten you to make you plead?                                                                                                                                                                                      |
| The Defendant:     | No sir.                                                                                                                                                                                                                                                  |
| The Court:         | Your choice to take care of your case this way?                                                                                                                                                                                                         |
| The Defendant:     | It is.                                                                                                                                                                                                                                                   |
| The Court:         | Under this agreement, you would plead guilty to false pretenses, a $1,000.00 or more, but less than $20,000.00.  This is a felony normally punishable by up to five years; as a second habitual, you will be punishable by up to seven and a half years.  There would be two counts of that.  You understand that?  Is that a yes? |
| The Defendant:     | Yes sir.                                                                                                                                                                                                                                                 |
| The Court:         | Do you understand that if I accept your plea, you will not have a trial of any kind.  You give up all the rights that go along with having a trial, including the right to appeal?                                                                        |
| The Defendant:     | Yes.                                                                                                                                                                                                                                                     |
| The Court:         | All right.    All the rights that you give up are explained on the Advice of Rights form here that Mr. Glaser gave me.  You went over this paper with him                                                                                                 |

and then signed at the bottom to tell me that you wanted to waive all your rights?

The Defendant:    Yes, that is my signature.

The Court:    All right.  I do have to inform everyone that pleads guilty that if you are not a U.S. citizen and you plead guilty to a felony, the federal government could take action against your immigration status and deport you.  Do you understand that?

The Defendant:    I understand.

The Court:    With all of your rights in mind, do you plead guilty as a second offender to counts one and three?

The Defendant:    Yes.

The Court:    All right.  Mr. Goldman, were you in the County of Kalamazoo, Michigan between – let's see, November 14, 2014 and November 24th of that year?

The Defendant:    Thanksgiving last year, yes sir.

The Court:    All right.  At that time and place, within our County, did you, with the intent to defraud or cheat, meaning to get money or value to which you were not entitled, use or make a false pretense to obtain that money?

The Defendant:    I did what I understand, yes.

The Court:    Okay.  So you used an instrument or some paper in order to get money or property worth a $1,000.00 or more but less than $20,000.00 and you did it – that at two separate financial institutions within the County?

The Defendant:    It was my personal checks written to myself.  Yes.

The Court:    But you didn't have – you didn't actually have a right to that value, correct?

The Defendant:    Correct.

9

| The Court: | And that, again, that was in two separate – two separate banks or credit unions? |
|---|---|
| The Defendant: | Correct. |
| The Court: | Counsel, do you think that we covered the elements? |
| [The Prosecutor]: | Count three is a conspiracy charge, your Honor. |
| The Court: | Oh, I'm sorry, I looked at the wrong thing.  All right.  Did you, same date, time and place, did you unlawfully conspire, combine, or confederate or agree with Roseanna Dickenson to commit the offenses that we have talked about? |
| The Defendant: | Yes. |

(Plea Tr., ECF No. 15-3, PageID.427-431.)

Before the end of the plea hearing, Petitioner asked the court to adjust the bond.  The court stated in response: "I was told that the guidelines might be 12 months, they might be 14 months.  With all of that in mind, I am going to leave it where it is."  (*Id.*, PageID.433.)

Although there was no mention of a *Cobbs* agreement during the plea hearing, it is apparent that all parties and the court believed such an agreement was in place. (Sentencing Tr. III, ECF No. 15-6, PageID.484-485, 491.)  A "*Cobbs* agreement" refers to a procedure set forth in *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), in which "the Michigan Supreme Court authorized a particular type of plea agreement wherein a judge states the appropriate length of sentence, which is non-binding, but if the defendant subsequently pleads guilty, that defendant retains the absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation."  *Wright v. Lafler*, 247 F. App'x 701, 703, n.1 (6th Cir. 2007).

10

The *Cobbs* agreement here was that the court would sentence Petitioner at the bottom of the guideline minimum range, whatever that range might turn out to be.  (Plea Tr., ECF No. 15-3, PageID.428) ("I indicated that at the time of sentencing that I would sentence Mr. Goldman at the bottom of the guidelines, however[ ] they are determined on the day of sentencing.").

The dispute regarding Petitioner's prior criminal history required three hearings to resolve.  (Sentencing Tr. I, ECF No. 15-4; Sentencing Tr. II, ECF No. 15-5; Sentencing Tr. III, ECF No. 15-6.)  At the final sentencing hearing on March 8, 2016, the court asked Petitioner if he had any additions, deletions, or corrections to the pre-sentence report.  (Sentencing Tr. III, ECF No. 15-6, PageID.481-483.) Petitioner indicated that he did not.  (*Id.*, PageID.483.)  The court calculated the score for Petitioner's prior record variables and offense variables and determined that the discretionary guidelines provided for a range for Petitioner's minimum sentence of ten to 28 months.  (Sentencing Tr. III, ECF No. 15-6, PageID.480-481.)  The court sentenced Petitioner at the bottom end of that range, ten months, just as the court had indicated it would before Petitioner entered his plea.  (Plea Tr., ECF No. 15-3, PageID.428.)

Petitioner's habeas issue III contends that the pre-sentence report was full of lies.  He does not identify the lies, nor does he explain how the lies impacted the calculation of his minimum sentence range.  The transcript reveals that Petitioner objected to, and was overruled regarding, only two scores: the score of prior record variable 5 regarding misdemeanor convictions, MICH. COMP. LAWS § 777.55(1), and

the score of offense variable 13 regarding pattern of criminal behavior, MICH. COMP. LAWS § 777.43(1)(f).

Even if the court accepted Petitioner's argument with respect to prior record variable 5, his guidelines minimum sentence range would remain unchanged. Petitioner argued for a score of 2 points.  The prosecutor argued for a score of 10 points, and the court agreed.  Even if the 8 point difference were subtracted from Petitioner's prior record variable score, however, he would still fall in the E column for prior record variable level.  MICH. COMP. LAWS §§ 777.66, 777.21(3)(a)-(c).

If the court accepted Petitioner's argument with regard to offense variable 13, it would change his offense variable level from II to I, and his minimum range from ten to 28 months to seven to 28 months.  As set forth fully below, however, the dispute regarding this variable was not factual, but rather, legal.

In Michigan, unless the only punishment prescribed by law for an offense is life imprisonment, the court imposing sentence must fix a minimum term of imprisonment and a maximum term; however, the maximum penalty provided by statute is the maximum term.  MICH. COMP. LAWS §§ 769.8, 769.9.  For some offenses, the maximum penalty is fixed.[3]  *See, e.g.*, MICH. COMP. LAWS § 750.218(4) (obtaining money of a value of $1,000.00 or more, but less than $20,000.00, by use of a false pretense has a maximum penalty of five years).

---

[3] For other offenses, such as first-degree criminal sexual conduct, the maximum penalty is life or any term of years.  MICH. COMP. LAWS § 750.520b(2).  Thus, the trial court has discretion to impose a maximum penalty.  MICH. COMP. LAWS § 769.9(2).

Here, Petitioner's maximum sentence was enhanced by his status as a habitual offender-second offense. MICH. COMP. LAWS § 769.10. That status permits the court to impose a maximum sentence one and one-half times the longest term prescribed for a first conviction. *Id.*[4] Under the statute, however, the enhancement is not mandatory. *See* MICH. COMP. LAWS § 769.10(2) ("The court shall not fix a maximum sentence that is less than the maximum term for a first conviction."). Here, although the court had discretion to impose a maximum sentence as low as five years, the court imposed the highest possible maximum sentence: seven years, six months.

Because the maximum sentence was more than one year and one day, Petitioner's incarceration was required to be in prison, regardless of the sentence minimum. *People v. Blythe*, 339 N.W.2d 399, 402 (Mich. 1983) ("A review of M.C.L. § 769.28 reveals that housing in the state penal institution, as opposed to the county jail or Detroit House of Correction, is dependent upon the maximum sentence imposed, and thus, so long as the defendant is sentenced to a maximum of at least a year and a day, incarceration will be in prison, regardless of the sentence minimum.").

There are some exceptions to the guidelines sentencing scheme. There are determinate sentences for some offenses. *See* MICH. COMP. LAWS § 750.227b (two year consecutive sentence for possession of a firearm during the commission of a felony). There are also intermediate sanctions. Section 769.34 of the Michigan Compiled Laws identifies certain circumstances where the court has freedom to impose a

---

[4] Petitioner's status as a habitual offender-second offense also affected his minimum sentence. The maximum-minimum changed from 23 months to 28 months. (Sentencing Tr. III, ECF No. 15-6, PageID.480-481.)

penalty different from that which would be imposed under the sentencing guidelines.

Petitioner contends that one of those exceptions is of relevance here:

> (c)    If the upper limit of the recommended minimum sentence exceeds 18 months and the lower limit of the recommended minimum sentence is 12 months or less, the court shall sentence the offender as follows absent a departure:
>
> > (i)    To imprisonment with a minimum term within that range.
> >
> > (ii)   To an intermediate sanction that may include a term of imprisonment of not more than 12 months.

MICH. COMP. LAWS § 769.34(4).   Petitioner contends that, because his calculated minimum range was ten to 28 months, the trial court could have imposed a determinate term of imprisonment of ten months in the county jail.[5]   Petitioner's counsel argued in favor of that result at the final sentencing hearing.   (Sentencing Tr. III, ECF No. 15-6, PageID.485-486.)

With the assistance of counsel, Petitioner filed an application for leave to appeal his convictions and sentences, raising two issues: first, he argued that he believed the agreement with respect to his sentence was for a ten-month sentence, not an indeterminate sentence with a minimum of ten months; and second, he argued that the trial court never established a factual foundation for the necessary element

---

[5] Petitioner actually pushes the argument one step further.  He argues that the option identified in MICH. COMP. LAWS § 769.34(4)(c)(i) forecloses the imposition of an indeterminate sentence with a minimum and a maximum.  This argument has no merit.  The Michigan Supreme Court held precisely the opposite in *People v. Harper*, 739 N.W.2d 523, 534 (Mich. 2007) ("[T]he sentencing court may elect either to sentence the defendant to a prison term with the minimum portion of the indeterminate sentence within the guidelines range or to impose an intermediate sanction . . . .").

of "false pretense." (Appl. for Leave to Appeal, ECF No. 15-31, PageID.753.)[6]  By order entered February 10, 2017, the Michigan Court of Appeals denied Petitioner's application. (Mich. Ct. App. Ord., ECF No. 15-31, PageID.749.)  Petitioner filed a *pro per* motion for reconsideration wherein he raised additional issues regarding the constitutionality of the false pretenses statute and challenged the validity of the information. (Mot. for Reconsideration, ECF No. 15-31, PageID.779-785.)  Petitioner supplemented his motion to include the issue regarding Michigan Parole Board jurisdiction (habeas issue II).  The Michigan Court of Appeals permitted the supplementation, but denied the motion for reconsideration, by order entered April 6, 2017. (Mich. Ct. App. Ord., ECF No. 15-31, PageID.828.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising all of the issues he had raised in the court of appeals.  The Supreme Court entered an order denying leave to appeal less than two weeks after Petitioner filed the application. (Mich. Ord., ECF No. 15-32, PageID.832.)  Petitioner then immediately filed the instant petition.

Even while his appeals, and then this petition, were pending, Petitioner continued to file requests for relief in the state trial court, court of appeals, and supreme court.  (ECF Nos. 15-7 to 15-31, 15-33, and 15-34.)  All of the issues Petitioner has raised in this petition, however, were raised during his initial appeal.

---

[6] Before filing his application for leave to appeal, Petitioner raised these issues in the trial court by way of a motion to withdraw his plea and a motion to correct sentence. (Kalamazoo Cnty. Cir. Ct. Register of Actions, ECF No. 15-1, PageID.355-356.)  Both motions were denied.  (*Id*.)

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an

examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well

as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    The validity of Petitioner's plea

Although Petitioner's initial statement of his habeas issues does not directly challenge the validity of his plea, his arguments are plainly directed toward that issue.  Petitioner argues repeatedly that his plea was not voluntary or knowing because he did not understand the nature of the charges against him and because he was promised, or believed he was promised, a sentence of ten months in the county jail in exchange for his plea.  Petitioner's contention that the complaint, warrant, and information were fatally deficient is directed toward the subject matter jurisdiction of the court and, thus, also attacks the validity of his plea.  Additionally, by his response to Respondent's answer (ECF No. 17), Petitioner has introduced a new challenge to the voluntary nature of his plea: he claims he did not know he was pleading to conspiracy, believing instead that he was pleading to two counts of false pretenses.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).[7]  Among claims not barred are those

---

[7] One of the claims barred by a valid guilty plea is Petitioner's claim that the evidence against him was insufficient.  Petitioner presents that claim in several different forms, most recently in an assertion that the false pretense statute is unconstitutional.  (Pet'r's Supp. Response to Answer to Pet., ECF No. 24.)  No matter what the form, any such claim is barred by his plea so long as that plea is valid.  *Post v. Bradshaw*, 621 F.3d 406, 427 (6th Cir. 2010) ("By pleading . . ., [Petitioner] waived any objection to the sufficiency of the evidence . . . .").

that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea obtained involuntarily and unintelligently violates due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

A.   Jurisdiction (habeas issue I)

Petitioner's first habeas issue challenges the power of the state to bring him into court. He contends that flaws in the complaint, warrant, and information deprived the trial court of subject matter jurisdiction over him. The Michigan Court of Appeals rejected Petitioner's argument for "lack of merit in the grounds presented." (Mich. Ct. App. Ord., ECF No. 15-31, PageID.749.)

The precise nature of Petitioner's challenge to the complaint, warrant, and information is difficult to pin down. He has attacked the documents on different grounds at different times. His primary challenge, however, appears to be that merely parroting the language of the false pretenses statute in the complaint, warrant, and information, does not provide sufficient notice of the conduct for which Petitioner is being prosecuted. This is a variation on Petitioner's argument that his actions were simply not criminal.

A criminal prosecution in the state of Michigan typically commences with a complaint, "a written accusation that a named or described person has committed a specified offense." MICH. CT. R. 6.101(A). A proper complaint, in turn, can provide

19

the basis for the court to find probable cause to support the issuance of an arrest warrant. MICH. CT. R. 6.102. After the accused has been arrested, the court must arraign him, MICH. CT. R. 6.104, and thereafter conduct a preliminary examination to determine whether probable cause exists to believe that an offense has been committed and that the accused committed it, MICH. CT. R. 6.110. If the court so determines, the accused is bound over for trial in the circuit court, *id*., and the prosecutor must file an information setting forth the substance of the accusation and, to the extent possible, the time and place of the alleged offense, MICH. CT. R. 6.112. The accused is arraigned again in the circuit court based on the information, MICH. CT. R. 6.113, and the matter then proceeds through discovery and trial or entry of a plea, depending on the case.

The content of the preliminary documents in a criminal prosecution has constitutional significance. The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See, e.g., In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id*. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable

on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).  "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira*, 806 F.2d at 639.  In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied.  *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Here, no matter what flaws might appear in the complaint, warrant, and information, Petitioner received detailed notice of the charges against him during his preliminary examination.  After hearing Petitioner's argument explaining why he believed his actions did not constitute the crime of false pretenses (Prelim. Exam. Tr., ECF No. 15-2, PageID.399-417), the district court provided an element-by-element explanation how Petitioner's conduct violated the false pretenses statute (*Id.*, PageID.417-422).  There is simply no question that Petitioner had sufficient information to adequately prepare a defense.  Petitioner's stubborn insistence that the law should be interpreted differently than as it was described by the district court judge does not render the judge's description (or the description in the complaint, warrant, or information) constitutionally inadequate.

Any challenge to the complaint, warrant, or information that goes beyond the issue of notice is purely a matter of state law.   "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5.

Petitioner's challenges to the complaint and warrant derive not from the federal constitution, but from state law.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Thus, this Court is bound by the state appellate court's determination that the complaint, warrant, and information in Petitioner's case were sufficient.

This Court is also bound by the Michigan Court of Appeals' conclusion that the trial court had jurisdiction over Petitioner and his criminal prosecution.  Specifically with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for

purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Accordingly, Petitioner's claim that his guilty plea is invalid because the state court did not have jurisdiction has been conclusively decided against him. The jurisdiction issue affords Petitioner no grounds for habeas relief.

### B.    Voluntary and knowing plea

The only means remaining for Petitioner to challenge the validity of his plea is to claim that it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find that a guilty plea is constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312

23

U.S. 329, 334 (1941).  Petitioner does not contend he is incompetent and, as explained above, Petitioner had adequate notice of the charges against him.[8]

The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S.

---

[8] Despite Petitioner's protests to the contrary, the notice of the charges against him plainly included the conspiracy charge.  (Prelim. Exam. Tr., ECF No. 15-2, PageID.421-422.)  Petitioner's further suggestion that the circuit court judge misled Petitioner into believing he was entering a plea to two counts of false pretense instead of one count of false pretense and one count of conspiracy is entirely disingenuous. After Petitioner's admission that he had participated in conduct that violated the false pretense statute, the prosecutor reminded the judge that the other count was conspiracy.  (Plea Hr'g Tr., ECF No. 15-3, PageID.431.)  The judge then asked Petitioner if Petitioner had conspired, combined, or confederated or agreed with Rosanna Dickenson to commit the false pretenses offense.  (*Id.*)  Petitioner acknowledged that he had so conspired.  (*Id.*)

759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of counsel will render a plea of guilty involuntary.  *See Hill*, 474 U.S. at 56-57.

Petitioner contends his plea was not knowing and voluntary, based on inaccurate statements from his counsel by which he believed he was promised a ten month sentence to be served in the county jail instead of a state correctional facility. When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself.  *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness);

*Blackledge*, 431 U.S. at 73 (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a subsequent assertion that the prosecutor offered him a specific sentence range in exchange for a plea of guilty.  In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms.  The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry."  781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).  The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties."  *Id.* at 90.  Furthermore, because defendant's later claim of a secret agreement was negated by the trial record, no evidentiary hearing was required.  *Id.* at 92.

The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993).  In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty.  The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026.  Thus, the Sixth Circuit was again faced with a situation in which

26

a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing.  Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

Here, the plea colloquy forecloses the argument Petitioner offers.  The prosecutor had made no agreement with respect to the sentence.  The court informed Petitioner at the plea hearing that the court had agreed to sentence Petitioner at the bottom of the sentencing guideline range "however[ ] they are determined on the day of sentencing."  (Plea Hr'g Tr., ECF No. 15-3, PageID.428.)  Near the end of the hearing, the court reiterated that the sentence remained uncertain: "the guidelines might be 12 months, they might be 14 months." (*Id.*, PageID.433.)  Nonetheless, when the court asked Petitioner if there were any other promises or threats that induced Petitioner's plea, Petitioner responded that there were not.  (*Id.*, PageID.428-429.)  If Petitioner was promised a ten month sentence in the county jail, and that promise prompted his plea, he certainly would have said something when the court explained the sentence was, in fact, not yet determined and might be as long as fourteen months.

Petitioner blames his counsel for Petitioner's subjective misunderstanding that the sentence would be ten months in the county jail.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's

performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

The plea colloquy precludes Petitioner's ineffective assistance claim.  If counsel erroneously induced Petitioner to believe his sentence would be only ten months, the trial court corrected that misinformation during the plea hearing.  In *Warner v. United States,* 975 F.2d 1207 (6th Cir. 1992), the Sixth Circuit rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. 975 F.2d at 1210. *See also Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999) ("[T]he state trial court's proper colloquy can be said to have cured any misunderstanding

Ramos may have had about the consequences of his plea."); *Marks v. Davis,* 504 F. App'x 383, 385-386 (6th Cir. 2012) (based on plea colloquy, court rejected petitioner's claim of misunderstanding that the calculated minimum range under Michigan's sentencing guidelines was actually the minimum and maximum sentence); *McAdoo,* 365 F.3d  at 487 (court rejected petitioner's claim that subjective misunderstanding regarding meaning of life sentence versus parolable life sentence rendered plea involuntary).

Where a defendant indicates on the record that he understands the specific consequences of his plea, he is "'bound by his statements[.]'" *Ramos*, 170 F.3d at 566 (quoting *Baker*, 781 F.2d at 90).  To hold otherwise, would "[render] the plea process meaningless . . . ."  *Id.*  Indeed, "the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before" the Court.  *Id.* Accordingly, even if counsel made the professionally unreasonable statements that Petitioner attributes to him – that Petitioner's sentence exposure was limited to ten months in the county jail – Petitioner has failed to show that he suffered any prejudice as a result.

The state court's determination that Petitioner's plea was knowingly, understandingly, and voluntarily made is amply supported by the record and entirely consistent with clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief with respect to his convictions.

## IV.    The validity of Petitioner's sentence

Petitioner challenges his sentence in two ways: first, he argues that the Michigan Parole Board does not have jurisdiction over him because his minimum sentence is stated in terms of months rather than years; and second, he claims the sentence is premised on falsehoods in the presentence investigation report.  Neither claim warrants habeas relief.

### A.    Michigan Parole Board jurisdiction

Petitioner does not explain how his sentence would be rendered constitutionally infirm by the Michigan Parole Board's lack of jurisdiction.  Moreover, the premise of his argument is flawed.  There is no reason to believe that the Michigan Parole Board does not have jurisdiction over Petitioner.

The statute upon which Petitioner bases his argument is MICH. COMP. LAWS § 791.234, which provides:

> [A] prisoner sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years other than a prisoner subject to disciplinary time is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted, less good time and disciplinary credits, if applicable.

*Id.*  Petitioner claims that, because his minimum sentence is stated in terms of months, rather than years, the parole board does not have jurisdiction over him.  The Michigan Court of Appeals has rejected that reading of the statute as "absurd." *Kelly v. Michigan Parole Board*, No. 292836, 2010 WL 4260900, *2 (Mich. Ct. App. Oct. 28, 2010) (court rejected argument that parole board did not have jurisdiction where the minimum sentence was one day).  In *Goldman II*, Judge Maloney opined that the

legislature's reference to "an indeterminate sentence . . . with a minimum in terms of years" likely served to distinguish sentences where the minimum is of a definite duration from sentences with an indefinite duration, such as sentences with a minimum term of life. *Goldman II* (Op., ECF No. 15, PageID.500); *see also Makowski v. Governor*, 852 N.W.2d 61 (Mich. 2014) (governor's commutation of a life sentence to a sentence with a minimum stated as the time defendant had already served in years, months, and days, brought the defendant within the jurisdiction of the Michigan Parole Board).

The Michigan state courts routinely state minimum sentences in terms of months. Most likely because the sentencing guidelines state the relevant range in terms of months. It would be ludicrous to suggest that the Michigan Parole Board does not have jurisdiction over a prisoner whose minimum sentence is 24 months, but it does have jurisdiction over a prisoner with a minimum sentence of two years. Any time period described in months can be described in years. Indeed, Petitioner's minimum sentence is 5/6ths of a year.

Even if Petitioner's absurd interpretation of the statute were adopted by the State of Michigan, it would not give rise to a cognizable habeas issue. Petitioner has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty

31

interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his ninety-month maximum sentence, he has no reasonable expectation of liberty.  The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained."  *Greenholtz*, 442

U.S. at 11.  In the absence of a liberty interest, Petitioner fails to state a cognizable habeas issue for a violation of his procedural due process rights.

> ### B.   Presentence report lies

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information.  He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).  His claim that there were any inaccuracies in the report arose only after

sentence was imposed.  At the hearing, Petitioner initially indicated there were inaccuracies in the report; however, after reviewing the report in detail with his counsel, Petitioner had no problem with the content of the report:

| | |
|---|---|
| The Court: | Have you had an opportunity to review the report and discuss it with your client, Mr. Glaser? |
| [Defense Counsel]: | I have, your Honor.  Apparently after a little greater consideration, the report is accurate. |
| The Court: | Mr. Goldman, you have had an adequate opportunity to review this with your lawyer? |
| The Defendant: | Yes. |
| The Court: | Do you have any additions, deletions, or corrections? |
| The Defendant: | No, your Honor. |

(Sentencing Tr. III, ECF No. 15-6, PageID.482-483.)

Every dispute regarding scoring under the guidelines was resolved in favor of Petitioner with the exception of the two variables previously identified:  the score of prior record variable 5 regarding misdemeanor convictions, MICH. COMP. LAWS § 777.55(1), and the score of offense variable 13 regarding pattern of criminal behavior, MICH. COMP. LAWS § 777.43(1)(f).  The dispute regarding variable 5 was harmless.  Even if the judge had decided the dispute in favor of Petitioner, his guidelines range would have been the same.  Where the guidelines range would apply regardless of whether a particular conviction was included, any error in its inclusion is harmless.  *Moore v. Howes*, No. 07-11844, 2009 WL 55922 (E.D. Mich. Jan. 8, 2009); *see also Williams v. United States,* 503 U.S. 193, 203 (1992) ("If the party defending the sentence persuades the court of appeals that the district court would have

imposed the same sentence absent the erroneous factor, then a remand is not required . . . ."); *United States v. Ward*, 506 F.3d 468, 476 (6th Cir. 2007) ("An error is harmless if the error 'did not affect the district court's selection of the sentence imposed.'"); *United States v. Zuniga-Lazaro*, 388 F.3d 308, 316-17 (7th Cir. 2004) (error in scoring guidelines harmless where same guidelines range would result from correct scoring); *United States v. Caldwell*, 358 F.3d 138, 143 (1st Cir. 2004) (same); *United States v. Caesar*, 124 F. App'x 60, 61 (2nd Cir. 2005) (same); *United States v. Sanders*, 41 F.3d 480, 486-87 (9th Cir. 1994) (same).  Accordingly, any error resulting from materially false facts in the scoring of prior record variable 5 was harmless.

The score regarding offense variable 13 was legal, not factual.  Offense variable 13 evaluates whether the offense was part of a pattern of felonious activity. MICH. COMP. LAWS § 777.43.  The pattern is evaluated over a five-year period that includes the sentencing offense.  MICH. COMP. LAWS § 777.43(2)(a).  In Petitioner's case, the sentencing court determined that the offense was part of a pattern of felonious criminal activity involving three or more crimes against property and, therefore, scored five points.  Petitioner did not dispute the number of offenses included in the pattern or when they occurred; instead, he challenged the court's interpretation of the beginning and ending points of the five-year period.  (Sentencing Tr. III, ECF No. 15-6, PageID.473-475.)  He argued that the court should end the period on the date of conviction of the present offense and look back five years.  The court rejected that interpretation and concluded the plain language of the statute would end the period on the date of the offense and look back five years.

The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright*, 464 U.S. at 84. Here, the state court's interpretation of the statute conclusively ends Petitioner's challenge to the scoring of offense variable 13. There was no factual dispute with regard to the facts underlying the scoring of offense variable 13. Accordingly, it cannot be said that the score and resulting sentence is based upon materially false information. And, to the extent Petitioner contends the trial court erred in determining the relevant period for scoring offense variable 13, he raises only a state law issue that is not cognizable on habeas review.

Petitioner has failed to demonstrate that the state court's sentence is premised on false information of constitutional magnitude. Accordingly, he has failed to demonstrate that the state court's resolution of the challenge to his sentence is contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief with respect to his sentence.

## V.    Motions to disqualify and sanction

Petitioner has filed a flurry of motions. Several of the motions ask the Court to strike statements of Respondent or his counsel from the record, to sanction Respondent or his counsel, or to disqualify Respondent's counsel. (ECF Nos. 19, 20, 21.) Petitioner bases his requests on claims that Respondent, his counsel, or the person who participated in Petitioner's criminal prosecution have made numerous false statements either in the underlying criminal case or in this proceeding. Petitioner's motions are entirely unsupported by the record and patently frivolous. All of Petitioner's claims flow from his contention that his conduct did not violate the

false pretense statute, a premise conclusively rejected by the state courts and waived by Petitioner's valid guilty plea.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied. Finally, I recommend that Petitioner's motions for sanctions, to strike, and to disqualify (ECF Nos. 19, 20, and 21) be denied.


Dated: February 5, 2018                    /s/  Phillip J. Green
                                           PHILLIP J. GREEN
                                           United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).